IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL BROTHERHOOD OF )
ELECTRICAL WORKERS, LOCAL 134, an )
unincorporated association, )
                                                        )    No. 12 C 7487
                     Plaintiff, )
     v.                                        )    Hon. Virginia M. Kendall
                                                        )
BRIAN CUNNINGHAM, )
                                                        )
                     Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff International Brotherhood of Electrical Workers, Local 134 filed a three-count complaint against Defendant Brian Cunningham alleging that the Defendant unlawfully accessed its "Labor Power" database, obtained the e-mail addresses of the Plaintiff's members, and e-mailed Plaintiff's members in an effort to foment discord within the union and cause the union to breach its contract with the Chicago Public School System. Defendant has now moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Plaintiff's Complaint and are assumed to be true for purposes of the Motion to Dismiss. *See Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). Plaintiff is a "labor organization" within the meaning of Section 2(2) of the Labor Management Relations

Act, 29 U.S.C. § 152. (Doc. 12, Amended Complaint, at ¶ 6.) Its principal place of business is located at 600 West Washington Boulevard in Chicago, Illinois. (*Id.* at ¶ 5.) Plaintiff maintains an electronic database on its computer network and servers known as the "Labor Power" database. (*Id.* at ¶ 9.) This database contains the personal and confidential information of the Plaintiff's thirteen thousand members. (*Id.*) Such information includes members' names, addresses, social security numbers and e-mail addresses. (*Id.*)

On or around May 10, 2012, Plaintiff's members and signatory contractors received an e-mail from an entity referring to itself as the "Local 134 Transparency Times." (*Id.* at ¶ 10.) The Local 134 Transparency Times sent subsequent blast e-mails to Plaintiff's members and contractors on June 6, 2012, July 23, 2012, September 11, 2012 and September 14, 2012. (*Id.* at ¶ 12.) The subject of each of the e-mails was "Local 134 Transpareancy [sic] Times – Letting our fellow brothers and sisters know what is really going on at 600 Washington." (*Id.* at ¶ 13.) The September 11, 2012 e-mail encouraged Plaintiff's members not to cross the picket lines established by the Chicago Teachers' Union ("CTU") during a strike the CTU commenced in September, 2012. (*Id.* at ¶ 15.) The e-mail also directed Plaintiff's members to report any member of any union who crossed the CTU's picket line to a union steward so that they may notify "officials at the Hall." (*Id.*)

Defendant Brian Cunningham is alleged to be the individual behind the "Transparency Times" e-mails. (*Id.* at ¶¶ 1, 12, 14-15.) Cunningham allegedly accessed the Plaintiff's computer network and obtained the e-mail addresses maintained in the Labor Power database. (*Id.* at ¶¶ 1, 22-23, 28-29.) He then engaged the services of a social media delivery service to send the "Transparency Times" mass e-mails. (*Id.* at ¶ 8.) After the e-mails were sent, Plaintiff's members complained that they had never provided their e-mail addresses to

Transparency Times. (*Id.* at ¶ 10.) Similarly, LNK Technologies, LLC, an electrical contractor that entered into a contract with the Plaintiff, complained that it received an e-mail from Transparency Times but had never provided its e-mail address to Transparency Times. (*Id.* at ¶ 11.) As a result, Plaintiff engaged a computer forensic firm to conduct an investigation. (*Id.* at ¶ 31.) That firm discovered that Cunningham had remotely accessed Plaintiff's computers and servers. (*Id.*)

Prior to this, Plaintiff executed a Project Labor Agreement with the Chicago Public Schools. (*Id.* at ¶ 16.) The Agreement contains a "no strike" clause. (*Id*.) Pursuant to this clause, Plaintiff agreed that neither it nor "any of its members, officers, stewards, agents, representatives or employees shall instigate, authorize, support, sanction, maintain or participate in any strike..." (*Id.*) The Agreement also contains language giving the Chicago Public Schools the right to discharge or discipline any employee who violates the Agreement. (*Id.* at ¶ 18.)

Plaintiff has now filed a three-count complaint against Cunningham. Specifically, Plaintiff alleges that Cunningham violated the Stored Wire and Electronic Communications Privacy Act, 18 U.S.C. § 2701, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by unlawfully accessing the Labor Power database and obtaining the e-mail addresses. Plaintiff also alleges that Cunningham tortiously interfered with its contractual relationship with the Chicago Public Schools by implicitly threatening Plaintiff's members who crossed the CTU picket line. Defendant has now moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6) the Court accepts as true all of the well-pled facts alleged in the complaint and construes all reasonable inferences in favor of

the nonmoving party. *See Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. When the factual allegations are well-pled the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See id.* at 679. A claim has facial plausibility when the factual content pled in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 678.

## DISCUSSION

I.  **The Complaint States a Claim for a Violation of the Stored Wire and Electronic Communications Privacy Act, 18 U.S.C. § 2701**

Congress passed the SCA to protect privacy interests in personal and proprietary information. *See Bloomington-Normal Seating Co. v. Albritton,* No. 09-1073, 2009 WL 1329123, at *4 (C.D. Ill. May 13, 2009) (citing *Kaufman v. Nest Seekers, LLC,* No. 05 C 6782, 2006 WL 2807177, at *4 (S.D.N.Y. Sept. 26, 2006)). The statute provides a cause of action when an individual or entity "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility" and "thereby obtains...a wire or electronic communication

4

while it is in storage in such system..." 18 U.S.C. § 2701(a). The statute defines an "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and [] any storage of such communication by an electronic communication incidental to the electronic transmission thereof; and [] any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(A), (B).

Cunningham argues that this claim should be dismissed because the Plaintiff failed to: (1) allege that Cunningham obtained unauthorized access to the Labor Power database; (2) allege the dates when Cunningham accessed the database; and (3) allege the existence of a computer or facility through which an electronic communication service is provided. The Court will address these in turn.

First, the Complaint clearly alleges that Cunningham used remote means to access the Labor Power database maintained on Plaintiff's computer network and servers. The Complaint alleges that Cunningham did this to obtain the e-mail addresses of the Plaintiff's members. The Complaint further alleges that Cunningham was not authorized to access the database. These allegations are sufficient under Rule 8 to state that Cunningham accessed Plaintiff's database without authorization.

Second, Cunningham is correct that the Complaint does not allege the specific dates he accessed the Labor Power database. However, pleading with the particularity required by Rule

5

9(b) is not required in this case because Plaintiff's SCA claim is not a claim for fraud.[1] Rather, a plaintiff is only required to provide fair notice of his allegations to state a claim under the SCA. *Cf Patric Patterson Custom Homes, Inc. v. Bach,* 586 F. Supp. 2d 1026, 1031 (N.D. Ill. 2008) (stating that Rule 9(b) does not apply to the similarly worded provisions in the CFAA); *C.H. Robinson Worldwide, Inc. v. Command Transp., LLC,* No. 05 C 3401, 2005 WL 3077998, at *4 (N.D. Ill. Nov. 16, 2005) (same); *P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, LLC,* 2007 WL 708978, at *6 (D.N.J. Mar. 2, 2007) (same); *The Dedalus Foundation v. Banach,* 09 C 2842, 2009 WL 3398595, at *4 (S.D.N.Y. Oct. 16, 2009) (same). Therefore, Plaintiff's failure to allege the specific dates Cunningham accessed the database is not fatal to its claim.

Cunningham's final argument is a closer call. Courts have generally interpreted § 2701 to apply to telephone companies, internet or e-mail service providers and bulletin board services. *See United States v. Steiger,* 318 F.3d 1039, 1049 (11th Cir. 2003); *Steve Jackson Games, Inc. v. United States Secret Service,* 36 F.3d 457, 462-63 (5th Cir. 1994). However, the Complaint here alleges that Cunningham accessed a database stored on the Plaintiff's computer network. While the Seventh Circuit has not ruled on the issue, other federal circuit and district court interpreting the SCA have held that Section 2701 does not apply to the act of hacking into a personal computer to download information stored on the hard drive because a personal computer does not constitute "a facility through which an electronic communication service is provided." *See Steiger,* 318 F.3d at 1049; *Council on American-Islamic Relations Action Network, Inc. v.*

---

[1] Rule 9(b) provides that "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means alleging the "who, what, when, where and how" of the alleged fraud. *See Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. Walgreen Company,* 631 F.3d 436, 441-42 (7th Cir. 2011).

*Gaubatz,* 793 F. Supp. 2d 311, 335 (D.D.C. 2011) ("the statute is clearly not triggered when a defendant merely accesses a physical client-side computer and limits his access to documents stored on the computer's local hard drive or other physical media"); *Freedom Banc Mortgage Services, Inc. v. O'Harra,* No. 11 C 1073, 2012 WL 3862209, at *9 (S.D. Ohio, Sept. 5, 2012) (same); *In re iPhone Application Litigation,* 844 F. Supp. 2d 1040, 1058 (N.D. Cal. 2012) ("courts that have taken a closer analytical look have consistently concluded that an individual's personal computer does not 'provide [] an electronic communication service' simply by virtue of enabling use of electronic communication services") (quoting *Crowley v. Cybersource Corp.,* 166 F. Supp. 2d 1263, 1270-71 (N.D. Cal. 2001)); *In re Doubleclick Inc.,* 154 F. Supp. 2d 497, 511 (S.D.N.Y. 2001) ("the cookies' residence on plaintiffs' computers does not fall into § 2510(17)(B) because plaintiffs are not 'electronic communication service' providers); *but see In re Intuit Privacy Litigation,* 138 F. Supp. 2d 1272, 1275 n. 3 (C.D. Cal. 2001); *Expert Janitorial, LLC v. Williams,* No. 09 C 283, 2010 WL 908740, at *5 (E.D. Tenn. Mar. 12, 2010) (finding that "allegations that the email accounts, user-names, and passwords were stored on plaintiff's computers and that defendants knowingly accessed this stored information without authorization, are sufficient allegations to assert a claim under § 2701 of the SCA").

While none of these cases are binding here, the Court agrees with the reasoning of the Eleventh Circuit and the districts that have followed it and concludes that simply accessing a personal computer to obtain stored data would not run afoul of § 2701. However, Plaintiff here does not simply allege that Cunningham accessed the hard drives located on its personal computers; rather, it alleges that Cunningham accessed a database stored on Plaintiff's computer network and servers. Unlike a simple hard drive, networks and servers can provide an electronic communication service. For example, the server could run an e-mail client. Therefore, it is

unclear at this point whether Cunningham accessed files stored within a facility that provides an electronic communication service. Plaintiff may not be able to eventually prove that its servers constitute facilities covered by the statute; however, it would be premature to dismiss the claim at the motion to dismiss stage. *See, e.g., Gaubatz,* 793 F. Supp. 2d at 335-36 (denying motion to dismiss as premature because plaintiff alleged defendants "accessed their computer servers, networks, or systems" and holding that "[w]here, as here, a plaintiff alleges that it provides an electronic communication service through its own systems and the defendant intentionally and without authorization obtained stored communications by accessing those systems, the plaintiff states a claim under Section 2701(a)"); *Becker v. Toca,* No. 07 C 7202, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008) (denying motion to dismiss as premature as law firm's computer network could potentially constitute a facility through which an electronic communication service is provided).

II. **The Complaint States a Claim for a Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

The CFAA prohibits individuals from intentionally accessing secure computers without authorization and damaging the computer or data. *See* 18 U.S.C. § 1030. Though primarily a criminal statute, the CFAA provides a private right of action for "[a]ny person who suffers damage or loss by reason of a violation of this section..." 18 U.S.C. § 1030(g). The CFAA defines damage as any "impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. § 1030(e)(8). Loss is defined as:

> Any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program system or information to its condition prior to the offense, any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service.

18 U.S.C. § 1030(e)(11).

As described above, Plaintiff sufficiently alleged that Cunningham remotely accessed the Plaintiffs' confidential Labor Power database without authorization in order to obtain the e-mail addresses of Plaintiffs' members. The Complaint also alleges that the Plaintiff suffered a loss because it expended more than $5,000 to investigate how Cunningham remotely accessed the Labor Power database. *See, e.g., Navistar, Inc. v. New Baltimore Garage, Inc.,* No. 11 C 6269, 2012 WL 4338816, at (N.D. Ill. Sept. 20, 2012) ("Plaintiffs have stated a CFAA claim by alleging that they incurred costs in investigating an alleged CFAA offense."); *Motorola, Inc. v. Lemko Corp.,* 609 F. Supp. 2d 760, 768 (N.D. Ill. 2009) (finding that alleging loss due to security assessment was sufficient to allege loss for purposes of the CFAA). The investigation included engaging a computer forensic firm to conduct the investigation. Cunningham's objections to this claim are identical to the ones he raised with respect to the SCA claim. They fail for the same reasons. However, it should be noted that the potential issue with respect to whether the Labor Power database constitutes a facility that provides an electronic communication service does not apply to this claim as the CFAA specifically applies to computers. Therefore, Plaintiff has adequately stated a claim for a violation of the CFAA.[2]

---

[2] Although the Defendant does not raise this issue, there is a split of opinion in this circuit as to whether a plaintiff must plead "damage and loss" or "damage or loss" to state a claim under the CFAA. *Compare Sam's Wines & Liquors, Inc. v. Hartig,* No. 08 C 570, 2008 WL 4394962, at *2 (N.D. Ill. Sept. 24, 2008) (stating that plaintiff must establish damage and loss to maintain a civil action under the CFAA); *Garelli Wong & Assocs., Inc. v. Nichols,* 551 F. Supp. 2d 704, 708-10 (N.D. Ill. 2008) (same) *with Teksystems, Inc. v. Modis, Inc.,* No. 08 C 5476, 2008 WL 5155720, at *5 (N.D. Ill. Dec. 5, 2008); *C.H. Robinson Worldwide, Inc. v. Command Trans., LLC,* No. 05 C 3401, 2005 WL 3077998, at *3 (N.D. Ill. Nov. 16, 2005); *Motorola, Inc. v. Lemko Corp.,* 609 F. Supp. 2d 760, 766-67 (N.D. Ill. 2010). Under the CFAA, "merely downloading and emailing confidential information is insufficient to show damages"; rather, a plaintiff must show "the destruction or impairment of the integrity or availability of data and information." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l. Inc.,* 616 F. Supp. 2d 805 (N.D. Ill. 2009). Plaintiff has not alleged any damage in this case. However, while the Seventh Circuit has not addressed the issue, every court of appeals to address the point has

### III. The Complaint Fails to State a Claim for Tortious Interference with a Contractual Relationship

In addition to its claims arising under federal statutes, Plaintiff asserts that Cunningham tortiously interfered with its contractual relationship with the Chicago Public Schools by sending e-mails to Plaintiff's members encouraging them not to cross the CTU picket line.[3] In order to maintain an action for tortious interference with a contractual relationship under Illinois law, a plaintiff must prove: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach caused by the defendant's conduct; and (5) damages. *Seip v. Rogers Raw Materials Fund, L.P.,* 948 N.E.2d 6238, 638 (Ill. App. Ct. 2011).

In this case, Plaintiff alleged that it entered into the valid PLA with the Chicago Teacher's Union. It alleges that Cunningham was aware of the PLA. It alleges that it breached the PLA because its members supported the Teachers' strike as a result of the e-mail. It alleges that it was damaged because it was forced to expend "money to repair the relationship and good will between it and CPS." However, it fails to sufficiently allege inducement.

Plaintiff's argument that Cunningham unjustifiably induced the breach rests on its allegations that: (1) the September 11, 2012 e-mail allegedly sent by Cunningham to Plaintiff's

---

concluded that a plaintiff is only required to allege damage or loss. *See Fire Sys. INt'l v. Roehrs,* 470 F.3d 1150, 1157 (5th Cir. 2006); *P.C. Yonkers, Inc. v. Celebrations The Party & Seasonal Superstore, LLC,* 428 F.3d 504, 511-12 (3d Cir. 2005); *Theofel v. Farey-Jones,* 359 F.3d 1066, 1078 n.3 (9th Cir. 2004). This Court agrees with those courts and finds that simply alleging loss is sufficient to state a claim under the statute.

[3] Since Plaintiff has adequately stated claims arising under the federal SCA and CFAA, the Court may exercise supplemental jurisdiction over the Plaintiff's Illinois common law tortious interference with a contractual relationship claim. *See* 28 U.S.C. § 1367.

members "encouraged the membership of Local 134 not to cross the picket lines established by" the CTU; and (2) that Cunningham "intentionally portrayed the blast e-mails to be official communications from the elected officers of Local 134." However, tortious interference with a contractual relationship is only actionable under Illinois law if the allegedly inducing actions are directed towards a third party who subsequently breaches the contract; "the acts of defendant aimed at a plaintiff do not constitute inducement." *Block v. Illinois Secretary of State,* No. 09 C 117, 2010 WL 706043, at *4 (S.D. Ill. Feb. 24, 2010); *see also, e.g., Skopp v. First Federal Sav. of Wilmette,* 545 N.E.2d 356, 361 (Ill. App. Ct. 1989) ("Inducement to breach a contract involves acts aimed at third parties other than the plaintiff which causes those parties to breach a contract held by the plaintiff."); *McCoy v. Gamesa Tech. Corp.,* No. 11 C 592, 2012 WL 245166, at *6-7 (N.D. Ill. Jan. 26, 2012) (finding that "[plaintiff] cannot state a claim for tortious interference by alleging that [defendant] induced [plaintiff] to breach its own agreement"). Since Plaintiff alleges that Cunningham's actions induced it to breach its own contract, the claim fails because the acts of a defendant directed toward a plaintiff do not constitute inducement.

## CONCLUSION

For the reasons set forth above the motion to dismiss is granted in part and denied in part. The tortious interference with contractual relationship claim is dismissed. The motion is denied with respect to the claims for violations of the SCA and CFAA.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 29, 2013